1  ARNOLDO CASILLAS, ESQ., SBN 158519
2  DENISSE O. GASTÉLUM, ESQ., SBN 282771
   **CASILLAS, MORENO & ASSOCIATES**
3  3500 W. Beverly Blvd.
   Montebello, CA 90640
4  Telephone:  (323) 725-0917
5  Facsimile:   (323) 725-0350
   Email: acasillas@morenolawoffices.com
6          dgastelum@morenolawoffices.com
7
   Attorneys for Plaintiffs, ESTATE OF GLENN SWINDELL,
8  G.S., M.S., J.S., DEBORAH BELKA and TYLER SWINDELL
9
   JONATHAN D. MELROD, ESQ., SBN 136441
10 1313 Scheibel Ln.
11 Sebastopol, CA 95472
   Telephone: (415) 806-0154
12 E/Mail: jonathan4536@sbcglobal.net
13
   Attorney for Plaintiff, SARAH SWINDELL
14

15              **UNITED STATE DISTRICT COURT**

16             **NOTHERN DISTRICT OF CALIFORNIA**

17
   ESTATE OF GLENN SWINDELL, by )  CASE NO.
18 and through successors in interest;      )
19 SARAH SWINDELL, individually and )
   as successor in interest; G.S., a minor,  )  **COMPLAINT FOR DAMAGES**
20 individually and as successor in          )
21 interest, by and through Sarah Swindell )  1.  Unreasonable Search and Seizure
   as Guardian ad Litem;  M.S., a minor,   )      (42 U.S.C. § 1983)
22 individually and as successor in          )  2.  Substantive Due Process Violation
23 interest, by and through Sarah            )      (42 U.S.C. § 1983)
   Swindell, as Guardian ad Litem,  J.S., a )  3.  Freedom of Speech and Expression
24 minor, individually and as successor in )      Violation (42 U.S.C. § 1983)
25 interest, by and through  Deann           )  4.  Right to Keep and Bear Arms Violation
   Macias, as Guardian ad Litem;             )      (42 U.S.C. § 1983)
26 DEBORAH BELKA, individually and )  5.  Municipal Liability for Unconstitutional
27 as successor in interest and               )      Customs and Practices (42 U.S.C.   §
   _____ )      1983)
28

                                    1

TYLER SWINDELL, individually and ) 6. Substantive Due Process Violation
as successor in interest, ) (42 U.S.C. § 1983)
) 7. Unreasonable Search and Seizure
Plaintiffs, ) (42 U.S.C. § 1983)
vs. )
)
COUNTY OF SONOMA,  DOES 1 )
through 10, inclusive, )
)
Defendants. )
_____)

## **COMPLAINT FOR DAMAGES**

COME NOW Plaintiffs ESTATE OF GLENN SWINDELL, by and through

successors in interest; SARAH SWINDELL, individually and as successor in

interest; G.S., a minor, individually and as successor in interest, by and through Sarah

Swindell as Guardian ad Litem;  M.S., a minor, individually and as successor in

interest, by and through Sarah Swindell, as Guardian ad Litem;  J.S., a minor,

individually and as successor in interest, by and through  Deann Macias, as Guardian

ad Litem, DEBORAH BELKA, individually and as successor in interest and  TYLER

SWINDELL, individually and as successor in interest,(hereinafter collectively

"Plaintiffs") and allege as follows:

### **INTRODUCTION**

1. This civil rights action seeks to establish the violations of fundamental

civil rights under the United States Constitution in connection with the death of

Glenn Swindell on May 17, 2014.

2. Glenn Swindell was a 39-year-old loving husband and father who

wanted nothing more in the world than to take care of his family.  His death has been

a profound and unimaginable loss to his wife, children and mother, the present

Plaintiffs.

3.       Without reasonable cause, the Sonoma County Sheriff's Office undertook a deliberate and intentional course of conduct which led to the death of Glenn Swindell (hereinafter "Glenn").  Glenn had not committed a crime, had not threatened any Sheriff personnel, had not attempted to flee or escape, and had not threatened any bystanders.  There was no immediate need to subdue him nor was his death preceded by any imminent emergency or exigent circumstances which called for the storming of his home by overzealous and out-of-control deputies of the Sonoma County Sheriff's Department.  Yet, the Sheriff's Office undertook a siege of Glenn's home, deploying dozens of sheriff deputies and summoning the Special Weapons and Tactics ("SWAT") unit to intervene to kill Glenn. Without reasonable cause, the Sheriff's Office and its SWAT unit, gained the unauthorized, unwarranted and reckless entry into Glenn's home, deployed numerous concussion bombs, and later pumped numerous rounds of chemical agents into the confined attic quarters where Glenn sought refuge.  These deliberate, callous and reckless actions of the defendants constituted an unreasonable use of force which created a situation that resulted in Glenn's death.

4.       The violent militarized police force carried out by the present defendants in response to a minor service call was a senseless and unwarranted act of police abuse.

## PARTIES

5.       At all relevant times, Glenn Swindell (hereinafter "decedent" or "Glenn") was an individual residing in Sonoma County, California. The claims made by the ESTATE OF GLENN SWINDELL, are brought by his wife, SARAH SWINDELL, his children, G.S., M.S., J.S., TYLER SWINDELL, and his mother DEBORAH BELKA, the successors in interest to the ESTATE OF GLENN SWINDELL pursuant to California Code of Civil Procedure § 377.32.

**COMPLAINT FOR DAMAGES**

6.      Plaintiff SARAH SWINDELL (hereinafter "Sarah") is and was, at all times relevant hereto, a resident of the County of Sonoma, and is the wife of decedent Glenn Swindell.

7.      Plaintiff G.S. is a minor, and is and was, at all times relevant hereto, a resident of the County of Sonoma, and was the natural daughter of decedent Glenn Swindell.

8.      Plaintiff M.S. is a minor, and is and was, at all times relevant hereto, a resident of the County of Sonoma, and was the natural son of decedent Glenn Swindell.

9.      Plaintiff J.S. is a minor, and is and was, at all times relevant hereto, a resident of the County of Sonoma, and was the natural son of decedent Glenn Swindell.

10.      Plaintiff TYLER SWINDELL is and was, at all times relevant hereto, a resident of the County of Sonoma, and was the natural son of decedent Glenn Swindell.

11.      Plaintiff DEBORAH BELKA is and was the natural mother of decedent Glenn Swindell.

12.      Defendant COUNTY OF SONOMA (hereafter "COUNTY"), is and was, at all times mentioned herein, a public entity, duly organized and existing under and by virtue of the laws of the state of California, with the capacity to sue and be sued. Defendant COUNTY is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees complied with the laws and the Constitutions of the United States and of the State of California.

**COMPLAINT FOR DAMAGES**

13.     The Sonoma County Sheriff's Office (hereinafter "Sheriff's Office") is a subdivision of Defendant COUNTY OF SONOMA.

14.     At all relevant times, each of DOES 1 through 10 were employees of the Sheriff's Office. At all times relevant herein, each of DOES 1 through 10 was an employee and/or agent of Defendant COUNTY and he or she acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant COUNTY and the Sheriff's Office, as well as under the color of the statutes and regulations of the State of California.

15.     At all relevant times, each of the Defendants DOES 1 through 10 was acting within his or her capacity as an employee, agent, representative and/or servant of Defendant COUNTY, and is sued in their individual capacity.

16.     On information and belief, at all relevant times, the individually named defendant deputies and DOES 1 through 10, inclusive, were residents of Sonoma County, California.

17.     The true names of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitious named Defendants is responsible in some manner for the conduct and liabilities alleged herein.

18.     Each of the Defendants caused and is responsible for the unlawful conduct and resulting by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so; by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; by promulgating policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiffs' and decedent's rights, to initiate and maintain adequate supervision and/or training; and, by ratifying the unlawful conduct

1    that occurred by agents and peace officers under their direction and control.

2    Whenever and wherever reference is made in this Complaint to any act by a

3    Defendant, such allegation and reference shall also be deemed to mean the acts and

4    failures to act of each Defendant individually, jointly and severally. They are sued in

5    their individual and official capacities and in some manner are responsible for the

6    acts and omissions alleged herein. Plaintiffs will ask leave of this Court to amend this

7    Complaint to allege such name and responsibility when that information is

8    ascertained. Each of the Defendants is the agent of the other.

9                              **JURISDICTION AND VENUE**

10        19.    This civil action is brought for the redress of alleged deprivations of

11   constitutional rights as protected by 42 U.S.C. § 1983, the First, Second, Fourth and

12   Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on

13   28 U.S.C. §§ 1331, 1343, and 1367.

14        20.    Venue is proper in this Court under 28 U.S.C. § 1391(b), because

15   Defendants reside in, and all incidents, events, and occurrences giving rise to this

16   action occurred in the COUNTY OF SONOMA, California, which is in the

17   geographic and legal jurisdiction of this court.

18        21.    With respect to Plaintiffs' supplemental state claims, Plaintiffs request

19   that this court exercise supplemental jurisdiction over such claims as they arise from

20   the same facts and circumstances which underlie the federal claims.

21                  **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

22        22.    Plaintiffs reallege and incorporate the foregoing paragraphs as if set

23   forth herein.

24        23.    On May 17, 2014, at approximately 8:00 a.m., Glenn Swindell was

25   pronounced dead in the attic of his home after a full-scale militarized assault of his

26   home by Sonoma County Sheriff's Office Deputies and tactical force personnel in

27   response to a minor service call.

28

---

6

**COMPLAINT FOR DAMAGES**

24.     On the evening of May 16, 2014, Glenn and Sarah had an argument while driving home from a work function. Upon arriving home, Glenn and his two children entered their home as Sarah delayed in exiting the vehicle. Glenn locked the front door.  The argument continued as Sarah stood outside the front door.

25.     Sarah called 911 and calmly reported the incident, requesting assistance in getting her children.  Sarah denied any violence had occurred that evening when questioned by the dispatcher, as none had occurred.  A patrol unit operated by Sheriff Deputies was dispatched to the Swindell home.  When questioned, Sarah made it unequivocally clear that the incident was nonviolent and that she wanted to get assistance in getting her children.

26.     Upon the patrol unit arriving at the Swindell home, Sarah reiterated the preceding facts to the responding Sheriff Deputies and again requested assistance in getting her children.

27.     The responding Sheriff Deputies proceeded to make contact with Glenn through the locked front door.  The Sheriff Deputies discussed the circumstances with Glenn. In response, and in compliance with the deputies requests, Glenn directed his children out of the home to be with their mother. Glenn remained in the house.

28.     Glenn continued to answer the Sheriff Deputies' questions through the locked front door. During the questioning by the Sheriff Deputies, Glenn demanded that the Deputies identify themselves, and asked that they leave and stop harassing him. Glenn expressed his fear of police to the Sheriff Deputies, and confided that he was afraid that they would shoot him as they shot the 13-year-old boy, Andy Lopez.

29.     The Sheriff Deputies and their supervisors learned that Glenn was the lawful owner of two firearms which were kept in safes. The Sheriff Deputies and their supervisors searched Glenn's Facebook page and falsely reported to the other

**COMPLAINT FOR DAMAGES**

deputies that Glenn "was making anti law [enforcement] hate style verbage [sic] and statements. …over the last couple of days."

30.     Angered and frustrated by Glenn's assertion of his rights, the Sheriff Deputies and their supervisors undertook a deliberate and intentional plan to wrongfully and unlawfully punish Glenn for asserting his rights not to let them into his home or to talk to them. The Sheriff Deputies and their supervisors threatened Glenn that if he refused to talk to them, they would arrest him.  The Sheriff Deputies and their supervisors proceeded to wrongfully and negligently declare Glenn a "barricaded suspect" so as to be able to punish him for his insistence that the deputies leave, for his unwillingness to open the door, and for asserting his rights.

31.     In violation of Glenn Swindell's First Amendment Rights, Second Amendment Rights, Fourth Amendment Rights, and Due Process Rights afforded under the Fourteenth Amendment, the Sheriff Deputies and their supervisors undertook a deliberate and intentional course of conduct which resulted in Glenn Swindell's death. The Sheriff Deputies and their supervisors wrongfully and/or negligently declared Glenn to be barricaded and undertook a siege of the Swindell home.  The Sheriff Deputies and their supervisors fabricated evidence and lied about the circumstances related to the incident, including in seeking a search and arrest warrant. These lies and fabrications include:

a)     That Glenn Swindell had committed a battery upon Sarah Swindell;

b)     That Glenn Swindell had imprisoned Sarah Swindell;

c)     That Sarah Swindell felt fearful and intimidated by Glenn Swindell's actions,

d)     That Glenn Swindell had barricaded himself in his home;

e)     That Glenn Swindell had cut off communications with Sheriff personnel whom were present at his home and property;

**COMPLAINT FOR DAMAGES**

f)     That Glenn Swindell had used his firearms in committing a felony; and

g)     That Glenn Swindell had committed a public offense.

32.     The Sheriff Deputies and their supervisors wrongfully, negligently and maliciously summoned the Sonoma County Sheriff's Office SWAT. The SWAT unit, in concert with the Sheriff Deputies and their supervisors, undertook a further siege of the Swindell home and property. They learned that Glenn Swindell was afraid of police, that he was not suicidal and that he had not committed any crime for which a full-scale militarized assault of the Swindell home was warranted. Despite this the SWAT unit, in concert with the Sheriff Deputies and their supervisors, undertook plans for such an assault and carried out such plans. They knew or should have known that the ultimate outcome of such a violent confrontation would be that Glenn would be seriously injured or killed.

33.     During the evening, Sarah approached the Sheriff Deputies and their supervisors.  Sarah requested that the situation be deescalated and expressed her concerns.  The Sheriff Deputies and their supervisors wrongfully and/or negligently coerced and threatened Sarah to take her children from her if she failed to cooperate with them.

34.     The personnel accompanying the SWAT unit and the Sheriff Deputies and their supervisors numbered more than 50 peace officers all of whom were present at the Swindell home and property.  This great militarized police force utilized military equipment, including a military assault vehicle, concussion bombs, and chemical agents to break down the garage door of the Swindell home and wrongfully enter the Swindell home causing damage to the garage, home and contents therein.

35.     Upon gaining this unauthorized, unwarranted and reckless entry of the Swindell home, the SWAT unit learned that Glenn sought refuge in attic of the home. They learned that Glenn had a great fear of police and feared that they would kill

**COMPLAINT FOR DAMAGES**

1   him.  In response, the Sheriff Deputies and their supervisors deemed Glenn to be an

2   "extremely paranoid" suspect.

3       36.    At no time relevant hereto did Glenn commit any crime, make any

4   threats against personnel from either the Sheriff's Office or the accompanying

5   tactical force units, or make any statements or commit any actions which indicated

6   that it was his intent to harm members of the tactical force units or the Sheriff's

7   Office or anyone else. There was no need to arrest him nor did there exist any other

8   emergency or exigent circumstances which required the defendants to enter his house

9   or attic, or to arrest Glenn.  Yet, through the concerted efforts of the Sheriff Deputies,

10  their supervisors and the responding SWAT units, a full-scale militarized assault

11  ensued upon Glenn Swindell's home.

12      37.    The Sheriff Deputies, their supervisors and the responding SWAT, HNT

13  and EOD units knew that Glenn was trapped in a confined attic and that he had no

14  means of escape. They knew or should have known that there was no pressing danger

15  or urgency which required them to enter the attic. They knew that Glenn would

16  eventually exit the attic and that they could and would take him into custody safely.

17  They knew that all they had to do was wait. Time was not "of the essence" as there

18  was no pending or developing risk to life. There was no reasonable need to use

19  Oleoresin Capsicum (hereafter OC gas or pepper spray) or tear gas or any other

20  chemical agent, as there was no reasonable basis to enter Glenn's house or attic.

21      38.    Despite this, they formulated a plan for a tactical assault upon Glenn's

22  attic.  They knew that the door to the attic had been locked and/or sealed shut by

23  Glenn.  As a result of their wrongful search of the house, they learned that Glenn may

24  have armed himself.

25      39.    Despite this, the SWAT unit and other Sheriff's Office personnel used a

26  military-style assault vehicle to puncture a hole in the attic and they then proceeded

27  to pump OC gas and tear gas into the confined attic quarters.

28

**COMPLAINT FOR DAMAGES**

40.     They knew and intended that such tactics would cause Glenn to suffer great physical and emotional pain and suffering. They knew or should have known that the effect of the concentrated OC and tear gas, under the confined circumstances, would immobilize Glenn and kill him in an agonizing and painful way as the effects of this gas cocktail took effect.

41.     They knew that these effects would include eye pain, a burning sensation in the throat and nose, increased nasal secretions, chest tightness, sneezing, coughing, retching, ocular pain, watering and blurred vision, nasal pain, irritation and sneezing, oral pain, ulceration, excessive salivation, throat irritation, burning and pain, respiratory pain, shortness of breath, chest tightness, uncontrollable coughing and wheezing, gastrointestinal pain, discomfort and retching, a loss of consciousness, and skin peeling or rash. They knew that because of the tight and closed quarters Glenn sought refuge in and because of the great fear he expressed of the police, he would likely die from the effects of the gas cocktail.

42.     In fact, one of the SWAT supervisors declared his intent to kill Glenn upon arriving at the location by exclaiming, "Why don't you just kill the fucker!"

43.     The Sheriff Deputies, their supervisors and the responding SWAT unit proceeded to carry out their plan to kill Glenn by pumping the OS and tear gas cocktail into the close-quartered attic knowing that the gases would kill him or that he would kill himself as a result of the extreme pain and anguish that the gases would cause. The expected effects of the gases immediately came to fruition once they were pumped into the attic. Because Glenn suffered great and unbearable physical and mental anguish from the gases and because he was unable to leave the attic which soon became a gas chamber, he took his own life with a single gunshot to his head. The Sheriff's Office end goal that Glenn would not be bothering anyone was unfortunately achieved.

**COMPLAINT FOR DAMAGES**

44.    Glenn Swindell was a hard working and dedicated husband, father and son.  Glenn's wife, children and mother, the present Plaintiffs, enjoyed a strong and meaningful relationship with Glenn that was full of love.

### FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure

### 42 U.S.C. § 1983

### Against DOE Defendants 1 through 10

45.    Plaintiff Estate of Glenn Swindell realleges and incorporates the foregoing paragraphs as if set forth herein

46.    Defendants' actions described herein violated Glenn Swindell's rights under the Fourth Amendment to the United States Constitution incorporated and made applicable to states and municipalities by the Due Process Clause of the Fourteenth Amendment, by subjecting Glenn Swindell to unreasonable searches and seizures of his person and home.

47.    At the time of Glenn Swindell's death, he was not engaging in, nor had he engaged in, any assaultive or threatening conduct. Under the totality of the relevant circumstances that existed, he posed no danger or threat to the Sheriff Deputies, their supervisor, the responding SWAT units, or anyone else. The full-scale militarized assault of the Swindell home, including the unauthorized, unwarranted and reckless entry into the Swindell home, the deployment of concussion bombs and the pumping of numerous rounds of CS and OC chemical agents into the confined attic quarters where Glenn Swindell sought refuge, recklessly created an unconstitutional provocation leading to the death of Glenn Swindell.  Such conduct was unreasonable under the circumstances in every respect and was undertaken intentionally and recklessly by the Sheriff Deputies, their supervisors and the responding SWAT unit.

**COMPLAINT FOR DAMAGES**

48.     These actions violated Glenn Swindell's right to be free from unreasonable searches and seizures as guaranteed under the Fourth Amendment to the United States Constitution.

49.     During the deployment of the concussion bombs and the numerous rounds of OC and CS gas into the confined attic quarters, Glenn Swindell endured great physical and emotional pain and suffering.

50.     The actions of said defendants also caused meaningful and significant damage to Glenn Swindell's home, furnishings and other possessions contained therein.

51.     Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

52.     The unauthorized, unwarranted and reckless entry into Glenn Swindell's home, the deployment of concussion bombs and numerous rounds of toxic gases, and the prolonged full-scale militarized assault of the Swindell home was willful and done with a deliberate disregard for the rights and safety of Glenn Swindell, and therefore warrants the imposition of punitive damages as to the Sheriff Deputies, their supervisors and responding SWAT units.

53.     Accordingly, Defendants DOES 1 through 10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF

### Violation of Substantive Due Process Rights

### 42 U.S.C. § 1983

### Against DOE Defendants 1 through 10

54.     Plaintiff ESTATE OF GLENN SWINDELL realleges and incorporates the foregoing paragraphs as if set forth herein.

**COMPLAINT FOR DAMAGES**

1
2
3

     55.    The present claim is brought pursuant to 42 U.S.C. § 1983, for violation of GLENN SWINDELL's substantive due process rights guaranteed by the Fourteenth Amendment of the United States Constitution.

4
5
6
7

     56.    Defendants' actions described herein violated Glenn Swindell's rights under the Fourteenth Amendment to the United States Constitution by subjecting Glenn Swindell to conduct and circumstances which shock the conscience and exceed the norms of human decency.

8
9
10
11
12
13
14
15
16
17
18
19
20
21

     57.    The full-scale militarized assault of the Swindell home, including the unauthorized, unwarranted and reckless entry into the Swindell home, the deployment of concussion bombs and the pumping of numerous rounds of CS and OC chemical agents into the confined attic quarters where Glenn Swindell sought refuge, recklessly created an unconstitutional provocation leading to the death of Glenn Swindell.  Such conduct was unreasonable under the circumstances in every respect and was undertaken intentionally by the Sheriff Deputies, their supervisors and the responding SWAT unit.   They deliberately created a gas chamber environment in the confined and enclosed attic, knowing that GLENN SWINDELL would suffer unbearable and tortuous pain, discomfort and suffering that would kill him.   Because he was trapped in these unbearable conditions he took his own life to avoid the unbearable pain and suffering.   Previous to this, he had an extended conversation with his mother while in the attic.  He spoke of his fear of the police and expressed his love for her and his family and made it clear that he was not suicidal.

22
23
24
25

     58.    The actions of the present defendants violated Glenn Swindell's rights under the Fourteenth Amendment to be free from deliberate governmental conduct which shocks the conscience and which exceeds recognized norms of human decency.

26
27
28

     59.    During the deployment of the concussion bombs and the numerous rounds of OC and CS gas into the confined attic quarters, Glenn Swindell endured

**COMPLAINT FOR DAMAGES**

great physical and emotional pain and suffering, and such pain and suffering was the direct and proximate cause of his death at his own hands.

60.     Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

61.     The unauthorized, unwarranted and reckless entry into Glenn Swindell's home, the deployment of concussion bombs and numerous rounds of toxic gases, and the prolonged full-scale militarized assault of the Swindell home was willful and done with a deliberate disregard for the rights and safety of Glenn Swindell, and therefore warrants the imposition of punitive damages as to Defendants DOES 1 through 10, consisting of the Sheriff Deputies, their supervisors and responding SWAT units.

62.     Accordingly, Defendants DOES 1 through 10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

### THIRD CLAIM FOR RELIEF

### Freedom of Speech and Expression Violation

### 42 U.S.C. § 1983

### Against DOE Defendants 1 through 10

63.     Plaintiff Estate of Glenn Swindell realleges and incorporates the foregoing paragraphs as if set forth herein.

64.     Defendants' actions described herein violated Glenn Swindell rights under the First Amendment to the United States Constitution incorporated and made applicable to states and municipalities by the Due Process Clause of the Fourteenth Amendment, by prohibiting Glenn Swindell from exercising his constitutional right to free speech and expression, and by retaliating against Glenn Swindell for exercising those same rights.

65.     The present Plaintiff believes, and hereby alleges, that the violation of Glenn Swindell's First Amendment rights occurred pursuant to a custom or practice maintained by the Sheriff's Office and the COUNTY OF SONOMA, of retaliating against private citizens who exercise their First Amendment rights by voicing their opinions pertaining to the militarization of police.

66.     Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

67.     Accordingly, Defendants DOES 1 through 10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

### FOURTH CLAIM FOR RELIEF

### Right to Keep and Bear Arms Violation

### 42 U.S.C. § 1983

### Against DOE Defendants 1 through 10

68.     Plaintiff Estate of Glenn Swindell realleges and incorporates the foregoing paragraphs as if set forth herein.

69.     Defendants' actions described herein violated Glenn Swindell's rights under the Second Amendment to the United States Constitution incorporated and made applicable to states and municipalities by the Due Process Clause of the Fourteenth Amendment, by retaliating against Glenn Swindell for exercising his constitutional right to keep and bear arms in his home for the purpose self-defense.

70.     The present Plaintiff believes, and herein alleges, that the violation of Glenn Swindell's Second Amendment rights occurred pursuant to a policy, custom, or practice, maintained by the Sheriff's Office and the COUNTY OF SONOMA, of retaliating against private citizens who exercised their Second Amendment rights to keep and bear arms in their homes for the purpose self-defense.

**COMPLAINT FOR DAMAGES**

71.   Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

72.   Accordingly, Defendants DOES 1 through 10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability for Unconstitutional

### Customs and Practices

### 42 U.S.C. § 1983

### Against Defendant COUNTY OF SONOMA

73.   Plaintiff Estate of Glenn Swindell realleges and incorporates the foregoing paragraphs as if set forth herein.

74.   Based on information and belief, on and before May 17, 2014 and prior to the death of Glenn Swindell resulting from the Sheriff's Office full-scale militarized assault of his home, Defendant COUNTY OF SONOMA and DOES 1 through 10 were aware that the responding Sheriff Deputies and various other Sheriff's Office personnel, including the responding SWAT unit, had not received proper and necessary training in responding to minor service calls pertaining to domestic disputes and effectively dealing with individuals who are in a crisis, including safely defusing anxious and hostile behavior; deciphering when behavior escalates; reinforcing preventative techniques and practicing the principles of non-harmful physical intervention.

75.   Defendant COUNTY OF SONOMA and DOES 1 through 10, acting with deliberate indifference to the rights and liberties of the public in general, and of the present Plaintiffs and decedent, and of persons in their class, situation and comparable position, knowingly allowed the Sheriff Deputies and responding SWAT units to respond to minor service calls in the COUNTY OF SONOMA without

**COMPLAINT FOR DAMAGES**

proper training in the handling of such calls.  The Defendants knew that such untrained deputies would escalate minor services calls by creating violent confrontations leading to injury or death.

76.    By reason of the aforementioned custom and practice, Glenn Swindell was severely injured and subjected to pain and suffering which ultimately led to his death.

77.    Defendants COUNTY OF SONOMA and DOES 1 through 10 had either actual or constructive knowledge of the deficient practice and custom alleged in the paragraphs above. Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such custom and practice. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these customs and practices with respect to the constitutional rights of decedent, Plaintiffs, and other individuals similarly situated.

78.    As a further example to contemptuous disregard for the rights of the citizens of Sonoma County, there exists an insidious custom and practice within the Sonoma County Sheriff's department of interrogating the family members of persons they have killed and extracting from them through lies and subterfuge information which would be only helpful to the defense of a civil case.  This custom and practice was utilized in the present case where deputies and/or detectives of the Sonoma County Sheriff's office interrogated Sarah Swindell at length as to her relationship with her husband while withholding from her that they had killed him.

79.    These practices and customs implemented and maintained and still tolerated by Defendant COUNTY OF SONOMA were affirmatively linked to and were a significantly influential force behind the injuries of decedent and Plaintiffs.

**COMPLAINT FOR DAMAGES**

80.     By reason of the aforementioned acts and omissions, Glenn Swindell lost his life and his wife, children and mother, the present Plaintiffs, suffered the loss of his love, affection, society and moral support.

81.     Accordingly, Defendants COUNTY OF SONOMA and DOES 1 through 10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

## SIXTH CLAIM FOR RELIEF

### Interference with Familial Integrity

### Substantive Due Process Violation

### 42 U.S.C. § 1983

### Against Defendants COUNTY OF SONOMA and DOES 1 through 10

82.     Plaintiffs SARAH SWINDELL, individually;  DEBORAH  BELKA, individually;  G.S., a minor, by and through Sarah Swindell as Guardian ad Litem; M.S., a minor, by and through Sarah Swindell, as Guardian ad Litem,  J.S., a minor, by and through  Deann Macias, and TYLER SWINDELL, individually, reallege and incorporate the foregoing paragraphs as if set forth herein.

83.     The present claim is brought pursuant to 42 U.S.C. § 1983, for violation of the right of familial integrity guaranteed by the Fourteenth Amendment of the United States Constitution.

84.     As alleged above, the Sheriff's Deputies, their supervisors and the accompanying SWAT unit wrongfully and/or negligently coerced and threatened Glenn Swindell with arrest and removal of his children from the home if he did not answer their questions, and further wrongfully and/or negligently coerced and threatened Sarah Swindell with removal of her children if she refused to cooperate during the siege.

85.     As alleged above, the Sheriff's Deputies, their supervisors and the accompanying SWAT unit gained the unauthorized, unwarranted and reckless entry

**COMPLAINT FOR DAMAGES**

into Glenn Swindell's home, deployed numerous concussion bombs, and pumped numerous rounds of CS and OC chemical agents into the confined attic quarters where Glenn Swindell sought refuge.  These deliberate, callous and reckless actions unconstitutionally provoked the death of Glenn Swindell.   As such, these acts violated the constitutional limits on the use of a militarized police force, that is, the Fourth Amendment's limits on unreasonable searches and seizures.

86.    At the same time, these acts undertaken by the Sheriff Deputies, their supervisors and the accompanying SWAT unit violated the rights of Plaintiffs SARAH SWINDELL, individually, DEBORAH BELKA, individually, G.S., a minor, M.S., a minor, individually and as successors in interest to decedent GLENN SWINDELL, by and through their Guardian Ad Litem, SARAH SWINDELL, JOSHUA SWINDELL, individually, and TYLER SWINDELL, individually, to be free from police interference in their relationship with Glenn Swindell.

87.    The unreasonable conduct of the involved Sheriff Deputies, their supervisors and the accompanying SWAT unit was the direct and proximate cause of the death of Glenn Swindell. As a result of the unreasonable conduct of these Defendants, Plaintiffs lost Glenn Swindell, as well as his love, affection, society and moral support.

88.    The unreasonable conduct of these Defendants was willful and done with a deliberate disregard for the rights and safety of Glenn Swindell and the present Plaintiffs and therefore warrants the imposition of punitive damages as to the involved Sheriff personnel, including the responding Sheriff Deputies, their supervisors and the members of the accompanying SWAT unit.

89.    The unreasonable conduct of these Defendants was willful and done with a deliberate disregard for the rights of Plaintiffs and therefore warrants the imposition of punitive damages as to the involved Sheriff personnel, including the

**COMPLAINT FOR DAMAGES**

responding Sheriff Deputies, their supervisors and the members of the accompanying SWAT unit.

90.     Accordingly, Defendants COUNTY OF SONOMA and DOES 1 through 10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

**SEVENTH CLAIM FOR RELIEF**

**Unreasonable Search and Seizure**

**42 U.S.C. § 1983**

**Against DOE Defendants 1 through 10**

91.     Plaintiff Sarah Swindell realleges and incorporates paragraphs 1 through 44 as if set forth herein

92.     Defendants' actions described herein violated Sarah Swindell's rights under the Fourth Amendment to the United States Constitution incorporated and made applicable to states and municipalities by the Due Process Clause of the Fourteenth Amendment, by subjecting Sarah Swindell to unreasonable searches of her home and seizures of her person.

93.     The full-scale militarized assault of the Swindell home, including the unauthorized, unwarranted and reckless entry into the Swindell home, the deployment of concussion bombs and the pumping of numerous rounds of CS and OC chemical agents into the house constituted a violation of the Fourth Amendment's restrictions against unreasonable searches.  Such conduct was unreasonable under the circumstances in every respect and was undertaken intentionally and recklessly by the Sheriff Deputies, their supervisors and the responding SWAT unit.

94.     These actions violated Sarah Swindell's right to be free from unreasonable searches and seizures as guaranteed under the Fourth Amendment to the United States Constitution.

**COMPLAINT FOR DAMAGES**

95.    During the siege upon her home, Sarah Swindell was wrongfully and unlawfully taken into custody by defendants DOES 1 through 10.   She was concerned that the incident was growing out of control and that the defendants here were overzealously creating circumstances that were not warranted.   She voiced her concerns.   As a result, she was not permitted to see her children and they were taken into a portable control post where she could hear them crying.   She was threatened with having her children taken from her by the state if she refused to cooperate with them.   Fearing for her own safety and the safety of her children, she cooperated with the officers and remained at the location and stayed quite as ordered by the defendants.

96.    The actions of said defendants also caused meaningful and significant damage to Glenn Swindell's home, furnishings and other possessions contained therein.

97.    Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

98.    The unauthorized, unwarranted and reckless entry into Sarah Swindell's home, the deployment of concussion bombs and numerous rounds of toxic gases, and the prolonged full-scale militarized assault of the Swindell home was willful and done with a deliberate disregard for the rights of Sarah Swindell, and therefore warrants the imposition of punitive damages as to the Sheriff Deputies, their supervisors and responding SWAT units.

99.    Accordingly, Defendants DOES 1 through 10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

**COMPLAINT FOR DAMAGES**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests entry of judgment in their favor and against Defendants as follows:

A.  For compensatory damages, including pre-death pain and suffering damages, general damages and special damages, and statutory damages for violation of the laws and Constitution of the United States in an amount to be determined at trial;

B.  For punitive damages against Defendants DOES 1 through 10 pursuant to 42 U.S.C. § 1983 and any other applicable laws or status, in an amount sufficient to deter and make an example of each non-government  entity Defendant;

C.  For prejudgment interest to be determined at trial;

D.  For reasonable costs of this suit and attorneys' fees, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.  For such further other relief as the Court may deem just, proper, and appropriate.

Respectfully Submitted,

Dated: February 27, 2015          CASILLAS, MORENO& ASSOCIATES

By __/s/ Arnoldo Casillas _____
    ARNOLDO CASILLAS
    DENISSE O. GASTÉLUM
Attorneys for Plaintiffs,
ESTATE OF GLENN SWINDELL, G.S.,
M.S., J.S., TYLER SWINDELL, and DEBORAH
BELKA

**COMPLAINT FOR DAMAGES**

1    Dated: February 27, 2015          JONATHAN D. MELROD, ESQ., SBN

2                                      By: ___/s/ Jonathan D. Melrod _____
3                                          JONATHAN D. MELROD
                                       Attorney for Plaintiff,
4                                      SARAH SWINDELL

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# DEMAND FOR JURY TRIAL

COME NOW Plaintiffs ESTATE OF GLENN SWINDELL, by and through successors in interest; SARAH SWINDELL, individually and as successor in interest; G.S., a minor, individually and as successor in interest, by and through Sarah Swindell as Guardian ad Litem;  M.S., a minor, individually and as successor in interest, by and through Sarah Swindell, as Guardian ad Litem;  J.S., a minor, individually and as successor in interest, by and through  Deann Macias, as Guardian ad Litem, DEBORAH BELKA, individually and as successor in interest and  TYLER SWINDELL, individually and as successor in interest and hereby demand for a trial by jury.

Dated: February 27, 2015          CASILLAS, MORENO& ASSOCIATES

By ___/s/ Arnoldo Casillas _____
     ARNOLDO CASILLAS
     DENISSE O. GASTÉLUM
Attorneys for Plaintiffs,
ESTATE OF GLENN SWINDELL, G.S.,
M.S., J.S., TYLER SWINDELL, and DEBORAH
BELKA

Dated: February 27, 2015          JONATHAN D. MELROD, ESQ., SBN

By: ___/s/ Jonathan D. Melrod _____
     JONATHAN D. MELROD
Attorney for Plaintiff,
SARAH SWINDELL