1

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  ESTATE OF GLENN SWINDELL, et    )  Case No. 15-CV-897-SC
   al.,                           )
10                                )  ORDER GRANTING IN PART AND
                                  )  DENYING IN PART DEFENDANT'S
11            Plaintiffs,         )  <u>MOTION TO DISMISS</u>
                                  )
12      v.                        )
                                  )
13                                )
   COUNTY OF SONOMA, DOES 1 through)
14  10, inclusive,                )
                                  )
15            Defendants.         )
                                  )
16                                )
                                  )
17  _____)

18      Now before the Court is Defendant County of Sonoma's (the

19  "County") motion to dismiss Plaintiff Estate of Glen Swindell, et

20  al.'s ("Plaintiffs") First Amended Complaint ("FAC").  ECF No. 19

21  ("Mot.").  The motion is fully briefed[1] and suitable for disposition

22  without oral argument pursuant to Local Rule 7-1(b).  For the

23  reasons set forth below, the County's motion is GRANTED IN PART and

24  DENIED IN PART.  Some of Plaintiffs' claims are DISMISSED WITH

25  PREJUDICE, while others are DISMISSED WITH LEAVE TO AMEND, as

26  specified below.

27  _____

28  [1] ECF Nos. 24 ("Opp'n"), 25 ("Reply").

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

### I.  **BACKGROUND**

As it must on a Rule 12(b)(6) motion, the Court assumes the truth of the following facts taken from Plaintiffs' First Amended Complaint.  ECF No. 6 ("FAC").

On the evening of May 16, 2014, Glenn Swindell and his wife, Sarah Swindell, had an argument while driving home from a work function.  Upon arriving home, Glenn and his two children entered their home as Sarah delayed in exiting the vehicle.  Glenn locked the front door of the house, and the argument continued as Sarah stood outside.  Sarah then called 911, reported the incident -- which she stated was nonviolent -- and requested assistance in getting her children.

The responding sheriff deputies ("deputies") made contact with Glenn through a locked door in the home, and convinced him to release his children.  Glenn then demanded that the deputies leave. He also made clear that he had a fear of law enforcement, stating that he was afraid they would shoot him as they had shot a thirteen-year-old child, Andy Lopez.

At some point, the deputies and their supervisors learned that Glenn was the lawful owner of two firearms.  They also searched his Facebook page and falsely reported to other deputies that Glenn had made disparaging statements about law enforcement.  Angered and frustrated, the deputies and their supervisors undertook a plan to punish Glenn for refusing to speak with them or let them into his home.

In order to secure a search and arrest warrant, the deputies and their supervisors fabricated evidence and lied about the circumstances relating to the incident, including

a) That Glenn Swindell had committed a battery upon Sarah Swindell;

b) That Glenn Swindell had imprisoned Sarah Swindell;

c) That Sarah Swindell felt fearful and intimidated by Glenn Swindell's actions;

d) That Glenn Swindell had barricaded himself in his home;

e) That Glenn Swindell had cut off communications with Sheriff personnel whom were present at his home and property;

f) That Glenn Swindell had used his firearms in committing a felony; and

g) That Glenn Swindell had committed a public offense.

At some point during the incident, Sarah Swindell approached the deputies and requested that the situation be deescalated. In response, the deputies threatened to take Sarah's children from her if she failed to cooperate.

The deputies and their supervisors then summoned the Sonoma County Sheriff's Office SWAT. Approximately 50 officers responded. Upon arriving at the scene, one of the SWAT supervisors exclaimed, "Why don't you just kill the fucker!" The SWAT team then proceeded to use a military assault vehicle, concussion bombs, and chemical agents to break down the garage door and enter the Swindell home.

Upon gaining entry, the SWAT unit learned that Glenn was in the attic, that he feared the police would kill him, and that he was armed. At no time, however, did Glenn indicate that he intended to harm anyone.

After Glenn refused to come out, the SWAT unit began to pump gas into the attic. Given his extreme fear of the police, the deputies and SWAT officers knew that Glenn was unlikely to leave ///

United States District Court
For the Northern District of California

1    the attic notwithstanding the extreme pain that the gas would

2    inflict.

3        After suffering intense mental and physical anguish as a

4    result of the gas, Glenn took his own life with a single gunshot to

5    the head.  After Glenn died, the deputies interrogated Sarah

6    Swindell at length as to her relationship with her husband while

7    withholding from her that he had died.

8        On June 16, 2015, Plaintiffs filed their complaint in this

9    action against the County of Sonoma and unnamed Defendants 1

10   through 10, alleging eleven claims for relief.  Plaintiff Estate of

11   Glenn Swindell brings claims one through four under 42 U.S.C. §

12   1983 for alleged violations of Glenn's Fourth, Fourteenth, First,

13   and Second Amendment rights, respectively, against the deputies,

14   their supervisors, and the responding SWAT units.  Plaintiff Estate

15   of Glenn Swindell also brings the fifth claim for relief alleging

16   municipal liability for unconstitutional customs and practices

17   under 42 U.S.C. § 1983 against the County, the deputies, their

18   supervisors, and the responding SWAT units.  The sixth claim for

19   relief is brought by Glenn Swindell's family -- Plaintiffs Sarah

20   Swindell, Deborah Belka, G.S., M.S., J.S., Deann Walund, and Tyler

21   Swindell -- under 42 U.S.C. § 1983 alleging that the County, the

22   deputies, their supervisors, and the responding SWAT units

23   interfered with their familial integrity in violation of their

24   Fourteenth Amendment Due Process rights.  The seventh claim for

25   relief is brought under 42 U.S.C. § 1983 by Plaintiff Sarah

26   Swindell against the deputies, their supervisors, and the

27   responding SWAT units for violations of her Fourth Amendment

28   rights.  Although it is not clear from the Complaint, it appears

United States District Court
For the Northern District of California

that all Plaintiffs bring the eighth, ninth, and tenth claims for
relief.  Those claims are against the County, the deputies, their
supervisors, and the responding SWAT units for, respectively,
assault and battery, wrongful death, and civil rights violations
under Cal. Civ. Code Section 52.1.  The eleventh claim for relief
is brought by Plaintiffs Sarah Swindell, G.S., M.S., J.S., Tyler
Swindell, and Deborah Belka against the County, the deputies, their
supervisors, and the responding SWAT units for survivorship.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) "tests the legal sufficiency of a claim." Navarro v.
Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based
on the lack of a cognizable legal theory or the absence of
sufficient facts alleged under a cognizable legal theory."
Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
1988).  "When there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement to relief." Ashcroft v.
Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court
must accept as true all of the allegations contained in a complaint
is inapplicable to legal conclusions.  Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." Id. (citing Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a
complaint must be both "sufficiently detailed to give fair notice
to the opposing party of the nature of the claim so that the party
may effectively defend against it" and "sufficiently plausible"

United States District Court
For the Northern District of California

such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).

When granting a motion to dismiss, a court is generally required to grant the plaintiff leave to amend. <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246–47 (9th Cir. 1990).  Leave to amend may be denied for undue delay, bad faith, repeated failure to cure deficiencies by previous amendments allowed, futility of the amendment, or prejudice.  <u>Foman v. Davis</u>, 371 US 178, 182 (1962); <u>Abagninin v. AMVAC Chem. Corp.</u>, 545 F3d 733, 742 (9th Cir. 2008).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990).

## III.  <u>DISCUSSION</u>

Defendants' motion asks the Court to dismiss Plaintiffs' FAC for failure to state a claim in their fifth, sixth, ninth, tenth, and eleventh claims for relief.  The Court addresses each in turn.

### A.  <u>Fifth Claim for Relief: Municipal Liability for Unconstitutional Customs and Practices Under 42 U.S.C. § 1983</u>

A plaintiff asserting a Section 1983 claim against a municipality must plead factual content that would allow the Court to draw a reasonable inference that: (1) the plaintiff has suffered a deprivation of a constitutional right; and (2) the violation of that right was caused by the enforcement of a municipal policy or

1  practice, the decision of an official with final policy making

2  authority, or inadequate training amounting to deliberate

3  indifference to a plaintiff's constitutional rights.  See Monell v.

4  Dept. of Social Services, 436 U.S. 658, 694 (1978).

5          **1.   Deprivation of a Constitutional Right**

6      Plaintiffs' fifth claim for relief alleges violations of Glenn

7  Swindell's First, Second, Fourth, and Fourteenth Amendment rights.

8  Defendants argue that the FAC does not state facts showing a

9  violation of Glenn Swindell's Second or Fourteenth Amendment

10  rights.

11      The "Second Amendment protects the right to possess a handgun

12  in the home for the purpose of self-defense." McDonald v. City of

13  Chicago, 561 U.S. 742, 790 (2010).  The FAC alleges that sheriff

14  deputies knew that Glenn lawfully owned firearms and assumes, in

15  conclusory fashion, that the alleged unlawful search and seizure

16  must have been, in part, retaliation for owning firearms.

17  Plaintiffs' conclusory allegations are insufficient to state a

18  claim based on a violation of the Second Amendment.  Moreover,

19  Plaintiffs do not allege facts showing an interference with Glenn's

20  right to possess a gun.  To the contrary, the FAC states that Glenn

21  kept multiple guns in his home.  Accordingly, to the extent that

22  Plaintiffs' fifth claim for relief relies on purported Second

23  Amendment violations, it is DISMISSED WITHOUT PREJUDICE.

24      As to alleged Fourteenth Amendment violations, Plaintiffs

25  clarify in their Opposition that the Fourteenth Amendment is

26  relevant to their fifth claim for relief only insofar as the

27  Fourteenth Amendment applies the First, Second, and Fourth

28  Amendments to the states.  Opp'n at 8-9.  Plaintiffs therefore do

1  not allege an independent Fourteenth Amendment violation.

2  Accordingly, their fifth claim for relief as to purported

3  Fourteenth Amendment violations is DISMISSED WITHOUT PREJUDICE.

4      Defendants do not challenge Plaintiffs' fifth claim for relief

5  as to alleged First and Fourth Amendment violations.  Thus, the

6  fifth claim for relief survives only as to those allegations.

7              **2.  Municipal Policy or Practice**

8      The Supreme Court has held that a municipality is subject to

9  liability under Section 1983 only when a violation of a federally

10  protected right can be attributed to (1) an express municipal

11  policy, such as an ordinance, regulation, or policy statement (see

12  Monell, 436 U.S. at 658); (2) a "widespread practice that, although

13  not authorized by written law or express municipal policy, is 'so

14  permanent and well settled as to constitute a custom or usage' with

15  the force of law" (City of St. Louis v. Praprotnik, 485 U.S. 112,

16  127 (1988)); (3) the decision of a person with "final policymaking

17  authority" (id. at 123); or (4) inadequate training that is

18  deliberately indifferent to an individual's constitutional rights

19  (City of Canton v. Harris, 489 U.S. 378 (1989)).  In addition,

20  there must be a sufficient causal connection between the

21  enforcement of the municipal policy or practice and the violation

22  of the plaintiff's federally protected right.  See Bd. of County

23  Comm'rs v. Brown, 520 U.S. 397, 400 (1997); City of Canton v.

24  Harris, 489 U.S. 378, 389 (1989).

25      The FAC alleges that Plaintiffs were harmed as a result of a

26  widespread County custom or practice, decisions made by sheriff

27  deputies and ratified by their supervisors and other high ranking

28  County officials, and the County's failure to properly train

**United States District Court**
For the Northern District of California

officers on the use of force amounting to deliberate indifference to individuals' constitutional rights.  See Opp'n at 10.  The Court addresses each in turn.

### a. Custom or Practice

In Monell, the Supreme Court recognized that Section 1983 municipal liability may be based on a municipal "custom or usage" having the force of law, even though it has "not received formal approval through the body's official decision-making channels." Monell, 436 U.S. at 690.  More recently, the Supreme Court acknowledged that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of County Comm'rs, 520 U.S. at 404.  The critical issue is whether there was a particular custom or practice that was "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."  Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).

Plaintiffs allege that "there exists an insidious custom and practice within the Sonoma County Sheriff's department of interrogating the family members of persons they have killed and extracting from them through lies and subterfuge information which would be only helpful to the defense of a civil case."  FAC ¶ 78. Without more, however, Plaintiffs' conclusory assertion that "there exists" a widespread practice is insufficient.  Furthermore, it fails to assert facts establishing that the practice caused the alleged rights violations in this case.  Interrogating Glenn's

surviving family members, after the fact, could not have been "the moving force" behind the alleged violations of Glenn's rights given that the violations at issue -- the alleged unlawful search and seizure, the alleged excessive use of force, and so on -- would have already occurred by that point.  See Monell, 436 U.S. at 694.

The FAC also alleges that the County has a widespread practice of (a) "retaliating against private citizens who exercise their Second Amendment rights to keep and bear arms in their homes for the purpose of self-defense" (FAC ¶ 65), and (b) of using "abusive militarized police tactics when responding to minor service calls" (Opp'n at 11).  Once again, Plaintiffs' assertions are conclusory and fail to allege facts showing a practice beyond the incident in this case.

For the forgoing reasons, Plaintiffs' allegations of unconstitutional practices within the County are DISMISSED WITHOUT PREJUDICE.

### b. **Decision By Final Policymaker**

The Supreme Court has held that municipal liability may be based on a single decision by a municipal official who has final policymaking authority.  Praprotnik, 485 U.S. at 123; Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).  Whether an official has final policy-making authority is an issue of law to be determined by the court by reference to state and local law.  See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989); Praprotnik, 485 U.S. at 123.  The mere fact that a municipal official has discretionary authority is not a sufficient basis for imposing municipal liability.  See Pembaur, 475 U.S. at 481-82 ("The fact that a particular official -- even a policymaking

**United States District Court**
For the Northern District of California

official -- has discretion in the exercise of particular functions
does not, without more, give rise to municipal liability based on
an exercise of the discretion."); <u>Killinger v. Johnson</u>, 389 F.3d
765, 771 (7th Cir. 2004) ("mere authority to implement pre-existing
rules is not authority to set policy").   In order for a
subordinate's decision to be attributable to the government entity
through ratification, "the authorized policymakers must approve the
decision and the basis for it . . . .   Simply going along with
discretionary decisions made by one's subordinates . . . is not a
delegation to them of authority to make policy." <u>Praprotnik</u>, 485
U.S. at 128-30; <u>see also</u> <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1348
(9th Cir. 1992) (concluding that mere inaction on part of policy
maker "does not amount to 'ratification' under <u>Pembaur</u> and
<u>Praprotnik</u>"); <u>Christie v. Iopa</u>, 176 F.3d 1231 (9th Cir. 1999)
(holding that ratification requires showing approval by a policy
maker, not a mere refusal to overrule a subordinate's action).

    Here, Plaintiffs allege that the deputies worked "hand-in-hand
with their supervisors." Opp'n at 11.  In addition, Plaintiffs
point to their allegation that a SWAT supervisor declared his
intent to kill Glenn upon arriving at the location.  <u>Id.</u>
Plaintiffs do not allege facts, however, establishing that any of
the alleged decisions that led to Glenn's death were made by an
official with final policymaking authority pursuant to state or
local law.  Moreover, they do not allege facts establishing that a
subordinate's decision leading to Glenn's death was ratified by a
municipal officer with final policy making authority.  Accordingly,
Plaintiffs' fifth claim for relief for municipal liability based on
///

1   "policymakers' ratification of the deputies' unconstitutional acts"

2   is DISMISSED WITHOUT PREJUDICE.  See Opp'n at 10.

3                **c. Inadequate Training**

4       In City of Canton v. Harris, the Supreme Court held that

5   deliberately indifferent training may give rise to Section 1983

6   municipal liability.  489 U.S. 378 (1989).  To make a claim based

7   on inadequate training, the plaintiff must demonstrate specific

8   training deficiencies and either (1) a pattern of constitutional

9   violations of which policy-making officials can be charged with

10   knowledge, or (2) that training is obviously necessary to avoid

11   constitutional violations, e.g., training on the constitutional

12   limits on a police officer's use of deadly force.  See Canton, 489

13   U.S. at 390.  The plaintiff must also show that "the need for more

14   or different training was so obvious, and the inadequacy so likely

15   to result in the violation of constitutional rights," as to amount

16   to a municipal policy of deliberate indifference to citizens'

17   constitutional rights.  Id.  Finally, the plaintiff must also

18   demonstrate a sufficiently close causal connection between the

19   deliberately indifferent training and the deprivation of the

20   plaintiff's federally protected right.  Id. at 391-92.

21       Defendants argue that "Plaintiffs' amended complaint is

22   devoid of facts showing what the training was, any prior similar

23   acts or other basis to show the need for more or different

24   training, [or that] the alleged inadequacy [was] likely to result

25   in constitutional violations."  Mot. at 9.  Plaintiffs' FAC,

26   however, makes several allegations along those lines:

27   "Defendant was aware that the responding Sheriff Deputies and

28   various other Sheriff's Office personnel, including the responding

**United States District Court**
For the Northern District of California

1  SWAT unit, had not received proper and necessary training in

2  responding to minor service calls pertaining to domestic disputes

3  and effectively dealing with individuals who are in a crisis,

4  including safely defusing anxious and hostile behavior; deciphering

5  when behavior escalates; reinforcing preventative techniques and

6  practicing the principles of non-harmful physical intervention."

7  FAC ¶ 74.   The FAC further alleges that the County "knew that such

8  untrained deputies would escalate minor service calls by creating

9  violent confrontations leading to injury or death."  FAC ¶ 75.

10  These allegations are sufficient to satisfy the requirements of

11  Rule 8.  Further, they relate to an area -- police training on the

12  use of force -- where training is obviously necessary to avoid

13  constitutional violations such that a lack of adequate training

14  could constitute deliberate indifference.  Finally, Plaintiffs have

15  alleged facts sufficient to establish that the lack of training

16  could have caused the alleged injuries in this case.

17      Accordingly, Defendants' motion as to Plaintiffs' allegations

18  of inadequate training is DENIED.

19          **3.    Claims for Damages to Surviving Plaintiffs**

20      Constitutional rights are personal rights which cannot be

21  vicariously asserted.  See Plumhoff v. Richard, 34 S.Ct. 2012, 2011

22  (2014); Rakas v. Illinois, 439 U.S. 128, 138-43 (1978).  Plaintiffs

23  do not dispute this and argue in their Opposition that their fifth

24  claim for relief asserts a Section 1983 claim on behalf of "the

25  Estate, not other plaintiffs."  Opp'n at 13.  Defendants point out,

26  however, that Plaintiffs' fifth claim for relief includes language

27  stating that, as a result of the alleged constitutional violations,

28  Glenn Swindell's "wife, children and mother, the present

1  Plaintiffs, suffered the loss of his love, affection, society and

2  moral support." FAC ¶ 80. Thus, the Court DISMISSES Plaintiffs'

3  fifth claim for relief WITH PREJUDICE to the extent that it asserts

4  claims on behalf of the surviving plaintiffs.

5      **B.   Sixth Claim for Relief: Municipal Liability Under 42**

6           **U.S.C. § 1983 for Interference with Familial Integrity**

7      Plaintiffs' sixth claim for relief is brought by Glenn

8  Swindell's family members -- Sarah Swindell, Deborah Belka, G.S.,

9  M.S., J.S., Deann Walund, and Tyler Swindell -- under 42 U.S.C. §

10 1983 alleging that the County, the deputies, their supervisors, and

11 the responding SWAT units interfered with their familial integrity

12 in violation of their Fourteenth Amendment Due Process rights. The

13 Due Process Clause of the Fourteenth Amendment protects the private

14 realm of family life from unwarranted state interference (see Meyer

15 v. Nebraska, 262 U.S. 390, 400 (1923)) and includes the right to

16 marry (Obergefell v. Hodges, 135 S. Ct. 2584, (June 26, 2015)), the

17 right to direct the upbringing of one's children (Pierce v. Society

18 of Sisters of the Holy Names of Jesus and Mary, 268 U.S. 510, 534

19 (1925)), and the right to live together as a family (Moore v. City

20 of East Cleveland, 431 U.S. 494 (1977)).

21     Plaintiffs' allegations do not establish interference with

22 their Fourteenth Amendment right to familial integrity. True,

23 Defendants' actions allegedly caused the death of Glenn Swindell --

24 surviving plaintiffs' father, son, and husband. The Court is not

25 aware of any case, however, finding a Fourteenth Amendment

26 violation where a family member has been wrongfully killed as a

27 result of state action. Accordingly, Plaintiffs' sixth claim for

28 relief is DISMISSED WITH PREJUDICE.

**United States District Court**
For the Northern District of California

14

**United States District Court**
For the Northern District of California

### C.    Ninth Claim for Relief: Wrongful Death

#### 1. Claims by Glenn Swindell's Mother, Deborah Belka

The ninth cause of action for wrongful death is asserted on behalf of all plaintiffs, including Glenn Swindell's mother, Deborah Belka.  FAC ¶¶ 11, 108.  Defendants argue that Ms. Belka does not have standing under California law to bring a wrongful death claim.

"In California, an action for wrongful death is governed solely by statute, and the right to bring such an action is limited to those persons identified therein." Scott v. Thompson, 184 Cal.App.4th 1506, 1510 (2010).  Specifically, standing to sue for wrongful death is governed by California Code of Civil Procedure Section 377.60, which authorizes causes of action "to be brought by decedent's personal representative 'or' any of a defined list of persons that includes a decedent's spouse, children, or heirs." Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 370 (9th Cir. 1998).  Where a decedent leaves issue, "his parents would not be his heirs at all and therefore not entitled to maintain [a wrongful death] action at all." Chavez v. Carpenter, 91 Cal. App. 4th 1433, 1440 (2001).  There is one exception, however: "Regardless of their status as heirs, parents may sue for the wrongful death of their child 'if they were dependent on the decedent.'" Id. at 1445; see also Foster v. City of Fresno, 392 F. Supp. 2d 1140, 1146 (E.D. Cal. 2005).  "'Dependence' refers to financial rather than emotional dependency . . . [and] a parent 'must show that they were actually dependent, to some extent, upon the decedent for the necessaries of life.'" Foster, 392 F. Supp. 2d at 1146; Chavez, 91 Cal. App. 4th at 1445 ("Financial dependency

**United States District Court**
For the Northern District of California

1    should be the test for parents who are not heirs of the

2    decedent.").

3        Glenn Swindell left a surviving spouse and children.  Further,

4    there are no facts alleged that Ms. Belka was financially dependent

5    on Glenn such that the exception under Section 377.60(b) could

6    apply.  Accordingly, Plaintiffs' wrongful death claim as to Deborah

7    Belka is DISMISSED WITH PREJUDICE.

8            **2.   Claims Against the County for Direct Liability**

9        The Complaint asserts a wrongful death claim against the

10   County for vicarious liability under Cal. Gov. Code § 815.2.  It

11   also attempts to assert a claim, however, against the County

12   directly.  See FAC ¶¶ 114-120.  "Except as otherwise provided by

13   statute, a public entity is not liable for an injury, whether such

14   injury arises out of an act or omission of the public entity or a

15   public employee or any other person."  Cal. Gov. Code, § 815(a).

16   "Thus, in California, all government tort liability must be based

17   on statute . . . ."  Hoff v. Vacaville Unified School Dist., 19

18   Cal. 4th 925, 932 (1998).

19       Section 815.2 provides only for the County's vicarious

20   liability for the acts of its employees; it does not authorize

21   Plaintiffs' direct liability claim against the County.  See FAC ¶¶

22   113-122.  Because Plaintiffs fail to state any statutory basis for

23   a negligence or wrongful death claim against the County directly,

24   Plaintiffs' ninth claim for relief is DISMISSED WITHOUT PREJUDICE

25   to the extent that it asserts claims against the County directly.

26   Its claim for vicarious liability survives, however.

27   ///

28   ///

**United States District Court**
For the Northern District of California

D.     **Tenth Claim for Relief: Civil Rights Violations Under The Bane Act, Cal. Civ. Code Section 52.1**

   **1. Failure to State a Claim**

The Bane Act, California Civil Code Section 52, provides a right to relief when someone "interferes by threats, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."  The elements of a claim for relief are: 1) an act of interference with a legal right by 2) intimidation, threats or coercion.  <u>Haynes v. City and County of San Francisco</u>, No. 09-0174, 2010 WL 2991732, at *6 (N.D. Cal. Jul.28, 2010); <u>Jones v. Kmart Corp.</u>, 17 Cal. 4th 329 (1998).

The California Court of Appeal held in <u>Shoyoye v. County of Los Angeles</u> that "where coercion is inherent in the constitutional violation alleged . . . the statutory requirement of 'threats, intimidation, or coercion' is not met.  The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself."  203 Cal.App.4th 947, 959 (2012).  In <u>Bender v. County of Los Angeles</u>, the California Court of Appeal held that where an arrest is unlawful and excessive force is used, a claim is stated under California Civil Code Section 52.1.  217 Cal. App. 4th 968, 977-978 (2013).

Defendants argue that Plaintiffs' tenth claim for relief should be dismissed under <u>Shoyeye</u> because it "fails to show threats, coercion or intimidation independent from the underlying claims of unlawful search and seizure."  Mot. at 14.  Like <u>Bender</u>, however, Plaintiffs allege excessive force in addition to an

1  unlawful search and seizure, including that Defendants used a
2  military assault vehicle, concussion bombs, and chemical agents to
3  enter Glenn Swindell's home and that they unnecessarily pumped gas
4  into the attic which ultimately led Glenn to take his own life.
5  Accordingly, Defendants' motion to dismiss Plaintiffs' tenth claim
6  for relief for failure to state a claim is DENIED.

7          **2.  <u>Standing</u>**

8      Plaintiffs assert their tenth claim for relief on behalf of
9  all plaintiffs, including all surviving plaintiffs.  Defendants
10 argue that "the surviving plaintiffs have no standing to assert a
11 Section 52.1 wrongful death claim . . . . [Because] Section 52.1(b)
12 specifically limits any cause of action to persons in his or her
13 own name and on his or her own behalf."  Mot. at 14.  Plaintiffs do
14 not dispute Defendants' argument.

15     Defendants are correct that relief under "the Bane Act . . .
16 is limited to plaintiffs who themselves have been the subject of
17 violence or threats."  <u>Bay Area Rapid Transit Dist. v. Super. Ct.</u>,
18 38 Cal. App. 4th 141, 144 (1995).  Accordingly, Plaintiffs' tenth
19 claim for relief as to all surviving plaintiffs is DISMISSED WITH
20 PREJUDICE.  Their claim on behalf of the Estate of Glenn Swindell,
21 however, survives.

22         **E.  Eleventh Claim for Relief: Survivorship**

23     Plaintiffs' eleventh claim for relief is for survivorship
24 under Cal. Civ. Proc. Code § 377.30.  "[A] survivor cause of
25 action," however, "is not a new cause of action that vests in the
26 heirs on the death of the decedent. . . . The survival statutes do
27 not create a cause of action."  <u>Quiroz v. Seventh Ave. Ctr.</u>, 140
28 Cal. App. 4th 1256, 1264 (2006).  Instead, the survivorship

**United States District Court**
For the Northern District of California

statutes simply provide a means for a decedent's survivors to assert "a separate and distinct cause of action which belonged to the decedent before death."  Id.  In short, there is no such thing as a claim for "survivorship."  Accordingly, Plaintiffs' eleventh cause of action is DISMISSED WITH PREJUDICE.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

**IV. CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

The following claims are DISMISSED WITH PREJUDICE:

- Fifth Claim for Relief to the extent it asserts claims for damages on behalf of the surviving plaintiffs

- Sixth Claim for Relief

- Ninth Claim for Relief to the extent it asserts claims on behalf of Deborah Belka

- Eleventh Claim for Relief

The following claims are DISMISSED WITHOUT PREJUDICE:

- Fifth Claim for Relief to the extent it relies on purported violations of the Second and Fourteenth Amendments, to the extent it asserts a claim based on an unconstitutional custom or practice, and to the extent it asserts a claim based on ratification

- Ninth Claim for Relief to the extent it asserts claims against the County directly

Defendants' motion to dismiss is otherwise DENIED. Accordingly, leave to amend is GRANTED only as to the fifth and ninth claims for relief as specified above. Plaintiffs may file a second amended complaint within thirty (30) days. Failure to file a second amended complaint within the time allotted may result in dismissal with prejudice.

IT IS SO ORDERED.

Dated: October 21, 2015

UNITED STATES DISTRICT JUDGE