UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GLENN SWINDELL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SONOMA, *et al.*, <br><br> Defendants. | Case No. 15-cv-00897-SI <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SPECIFIC CLAIMS WITHOUT LEAVE TO AMEND** <br><br> Re: Dkt. No. 32 |

Defendant's motion to dismiss the third cause of action and portions of the seventh cause of action of the second amended complaint is scheduled for a hearing on January 15, 2016. Pursuant to Civil Local Rule 7-1(b), the Court determines that the motion is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS defendant's motion without leave to amend.

**BACKGROUND**

The following facts are taken from the allegations in plaintiffs' Second Amended Complaint ("SAC"). Dkt. No. 31.

On the evening of May 16, 2014, Glenn Swindell and his wife, Sarah Swindell, had an argument while driving home from a work function. Upon arriving home, Glenn and two of his children entered their home as Sarah delayed in exiting the vehicle. Glenn locked the front door of the house, and the argument continued as Sarah stood outside. Sarah then called 911, reported the incident -- which she stated was nonviolent -- and requested assistance in getting her children.

The responding sheriff deputies ("deputies") made contact with Glenn through the locked front door of the home, and Glenn agreed to release his children. Glenn then demanded that the

1 deputies leave.  He also made clear that he had a fear of law enforcement, stating that he was
2 afraid they would shoot him as they had shot a thirteen-year-old child, Andy Lopez.

3     At some point, the deputies and their supervisors learned that Glenn was the lawful owner
4 of two firearms.  They also searched his Facebook page and falsely reported to other deputies that
5 Glenn had made disparaging statements about law enforcement.  Angered and frustrated, the
6 deputies and their supervisors undertook a plan to punish Glenn for refusing to speak with them or
7 let them into his home.

8     In order to secure a search and arrest warrant, the deputies and their supervisors fabricated
9 evidence and lied about the circumstances relating to the incident, including

10     a) That Glenn Swindell had committed a battery upon Sarah Swindell;
11     b) That Glenn Swindell had imprisoned Sarah Swindell;
12     c) That Sarah Swindell felt fearful and intimidated by Glenn Swindell's actions;
13     d) That Glenn Swindell had barricaded himself in his home;
14     e) That Glenn Swindell had cut off communications with the Sheriff personnel who were
15 present at his home and property;
16     f) That Glenn Swindell had used his firearms in committing a felony; and
17     g) That Glenn Swindell had committed a public offense.

18     At some point during the incident, Sarah Swindell approached the deputies and requested
19 that the situation be de-escalated.  In response, the deputies threatened to take Sarah's children
20 from her if she failed to cooperate.

21     The deputies and their supervisors then summoned the Sonoma County Sheriff's Office
22 SWAT. Approximately 50 officers responded.  Upon arriving at the scene, one of the SWAT
23 supervisors (identified as Doe 6) exclaimed, "Why don't you just kill the fucker!"  The SWAT
24 team then proceeded to use a military assault vehicle, concussion bombs, and chemical agents to
25 break down the garage door and enter the Swindell home.

26     Upon gaining entry, the SWAT unit learned that Glenn was in the attic, that he feared the
27 police would kill him, and that he was armed. At no time, however, did Glenn indicate that he
28 intended to harm anyone.

United States District Court
Northern District of California

After Glenn refused to come out, the SWAT unit began to pump gas into the attic. Given Glenn's extreme fear of the police, the deputies and SWAT officers knew that Glenn was unlikely to leave the attic notwithstanding the extreme pain that the gas would inflict. After suffering intense mental and physical anguish as a result of the gas, Glenn took his own life with a single gunshot to his head.

On February 27, 2015, plaintiff filed this lawsuit against the County of Sonoma and Does 1 through 10. On June 16, 2015, plaintiffs filed the first amended complaint against the same defendants. In an order filed October 21, 2015, Judge Conti of this Court granted in part and denied in part the County of Sonoma's motion to dismiss the first amended complaint. Judge Conti granted plaintiffs leave to amend, and on November 20, 2015, plaintiffs filed a second amended complaint alleging seven causes of action. Plaintiff Estate of Glenn Swindell brings claims one and two under 42 U.S.C. § 1983 for alleged violations of Glenn's Fourth, Fourteenth, and First Amendment rights against the Doe defendants (the deputies, their supervisors, and the responding SWAT units). The Estate of Glenn Swindell brings the third claim for relief under 42 U.S.C. § 1983 for municipal liability against the County and the Doe defendants. The fourth claim for relief is brought under 42 U.S.C. § 1983 by plaintiff Sarah Swindell against the Doe defendants for violations of her Fourth Amendment rights. The fifth claim for relief is brought by all plaintiffs[1] against the County and the Doe defendants for assault and battery. The sixth claim for relief is brought by plaintiffs Sarah Swindell, Tyler Swindell, and minors G.S., M.S. and J.S. for wrongful death. Finally, the Estate of Glenn Swindell brings the seventh claim for relief against the County and the Doe defendants for civil rights violations under Cal. Civ. Code Section 52.1.

On November 3, 2015, this case was reassigned to the undersigned judge. Now before the Court is the County's motion to dismiss the third and seventh causes of action for failure to state a

---

[1] Glenn Swindell's family includes his wife, Sarah Swindell; his mother, Deborah Belka; his children, Tyler Swindell and minors G.S., M.S., and J.S. Deann Walund is the Guardian ad Litem for the minor children.

claim.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

I. **Third Cause of Action: Municipal Liability**

The Supreme Court has held that a municipality is subject to liability under Section 1983 only when a violation of a federally protected right can be attributed to (1) an express municipal policy, such as an ordinance, regulation, or policy statement, *Monell v. Dept. of Social Services*,

4

436 U.S. 658, 694 (1978); (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); (3) the decision of a person with "final policymaking authority," *id*. at 123, which is also referred to as ratification; or (4) inadequate training that is deliberately indifferent to an individual's constitutional rights, *City of Canton v. Harris*, 489 U.S. 378 (1989).

Judge Conti previously held that plaintiffs stated a claim for municipal liability based upon a theory of inadequate training. Dkt. 28 at 12-13. Judge Conti dismissed with leave to amend plaintiffs' claim for municipal liability based on the theories of custom or practice and ratification. The SAC again asserts theories for municipal liability based upon custom or practice and ratification, and defendants moved to dismiss both theories as inadequately pled.

### A.     Custom or practice

Judge Conti dismissed with leave to amend plaintiffs' claim for municipal liability based on a custom or practice:

> Plaintiffs allege that "there exists an insidious custom and practice within the Sonoma County Sheriff's department of interrogating the family members of persons they have killed and extracting from them through lies and subterfuge information which would be only helpful to the defense of a civil case." FAC ¶ 78. Without more, however, Plaintiffs' conclusory assertion that "there exists" a widespread practice is insufficient. Furthermore, it fails to assert facts establishing that the practice caused the alleged rights violations in this case. Interrogating Glenn's surviving family members, after the fact, could not have been "the moving force" behind the alleged violations of Glenn's rights given that the violations at issue -- the alleged unlawful search and seizure, the alleged excessive use of force, and so on -- would have already occurred by that point. *See Monell*, 436 U.S. at 694.
>
> The FAC also alleges that the County has a widespread practice of (a) "retaliating against private citizens who exercise their Second Amendment rights to keep and bear arms in their homes for the purpose of self-defense" (FAC ¶ 65), and (b) of using "abusive militarized police tactics when responding to minor service calls" (Opp'n at 11). Once again, Plaintiffs' assertions are conclusory and fail to allege facts showing a practice beyond the incident in this case.

Dkt. 28 at 9-10.

The SAC omits the allegations regarding a custom and practice of interrogating family members, as well as the allegations about a custom and practice of retaliating against private

5

citizens who exercise their Second Amendment rights. The SAC appears to allege a custom and practice of allowing Sheriff deputies and responding SWAT units to respond to minor service calls without proper training in the handling of such calls.  The SAC alleges:

> 61.  Based on information and belief, on and before May 17, 2014 and prior to the death of Glenn Swindell resulting from the Sheriff's Office full-scale militarized assault of his home, Defendant COUNTY OF SONOMA and DOES 1 through 10 were aware that the responding Sheriff Deputies and various other Sheriff's Office personnel, including the responding SWAT unit, had not received proper and necessary training in responding to minor service calls pertaining to domestic disputes and effectively dealing with individuals who are in a crisis, including safely defusing anxious and hostile behavior; deciphering when behavior escalates; reinforcing preventative techniques and practicing the principles of non-harmful physical intervention.
>
> 62. Defendant COUNTY OF SONOMA and DOES 1 through 10, acting with deliberate indifference to the rights and liberties of the public in general, and of the present Plaintiffs and decedent, and of persons in their class, situation and comparable position, knowingly allowed the Sheriff Deputies and responding SWAT units to respond to minor service calls in the COUNTY OF SONOMA without proper training in the handling of such calls. The Defendants knew that such untrained deputies would escalate minor services calls by creating violent confrontations leading to injury or death.
>
> 63. By reason of the aforementioned custom and practice, Glenn Swindell was severely injured and subjected to pain and suffering which ultimately led to his death.

SAC ¶¶ 61-63.

Plaintiffs' opposition to defendant's motion to dismiss frames the custom and practice theory as follows:  there is a "widespread custom of utilizing abusive militarized police tactics when responding to minor service calls [which] comes from among the highest ranks of the Sonoma County Sheriff's Office."  Dkt. 33 at 10:20-22.  Plaintiffs argue that their allegations regarding this incident, including the fact that Doe 6, a supervisor, allegedly stated "Why don't you just kill the fucker!" are sufficient to state a claim of municipal liability based upon custom and practice.

The Court finds that plaintiffs have not sufficiently alleged a custom or practice because "[a] single instance is not sufficient to show that a 'practice is so widespread as to have the force of law.'" *Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)).  Plaintiffs' allegations of a custom or practice of using abusive militarized police tactics when responding to minor service calls are

limited to the incident in this case. As Judge Conti found when reviewing virtually identical allegations in the FAC, allegations limited to a single incident are insufficient to establish a custom or practice. *See Okla. City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996) ( "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."). Accordingly, the Court GRANTS defendant's motion to dismiss the third claim for relief to the extent plaintiffs allege municipal liability based upon custom or practice.

**B.     Ratification**

The SAC also alleges a claim for municipal liability based upon a decision by a municipal officer who has final policymaking authority. Judge Conti previously dismissed this claim with leave to amend:

> Here, Plaintiffs allege that the deputies worked "hand-in-hand with their supervisors." Opp'n at 11. In addition, Plaintiffs point to their allegation that a SWAT supervisor [Doe 6 in the SAC] declared his intent to kill Glenn upon arriving at the location. *Id*. Plaintiffs do not allege facts, however, establishing that any of the alleged decisions that led to Glenn's death were made by an official with final policymaking authority pursuant to state or local law. Moreover, they do not allege facts establishing that a subordinate's decision leading to Glenn's death was ratified by a municipal officer with final policy making authority.

Dkt. 28 at 11:17-26.

The Court finds that the SAC has not added any facts in support of a claim for municipal liability based upon ratification. The SAC alleges that "DOE 6 was a municipal officer of the COUNTY with final policymaking authority" and that "Defendant DOES 6 through 10 were also duly appointed deputies, sergeants, lieutenants, detectives, or other officers, officials, executives and/or policymakers of the Sheriff's Office, a department and subdivision of Defendant COUNTY . . ." SAC ¶¶ 14, 18. These allegations are conclusory and lacking in any factual support, and accordingly the Courts GRANTS defendant's motion to dismiss the third claim for relief to the extent this claim is based upon a ratification theory.

C.   **Leave to amend**

As plaintiffs have already been granted leave to amend the municipal liability claim to cure the specific deficiencies identified in this order, the Court finds that further leave to amend at this time is not warranted. However, the Court is mindful of the fact that plaintiffs have not yet conducted discovery. If plaintiffs discover additional facts that would support a claim for municipal liability based upon custom or practice or ratification, they may seek leave to amend the complaint.

II.   **Seventh Cause of Action: Violation of Civil Rights under Cal. Civ. Code § 52.1**

Plaintiffs' seventh cause of action is titled "Civil Rights Violations (Cal. Civ. Code § 52.1)." Judge Conti previously held that plaintiff Estate of Glenn Swindell stated a claim under California Civil Code Section 52 (also known as the Bane Act), but that the other plaintiffs did not have standing to allege such a claim because "the Bane Act . . . is limited to plaintiffs who themselves have been the subject of violence or threats." *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141, 144 (1995). The seventh cause of action states that it is brought on behalf of the Estate of Glenn Swindell under Section 52.1, but it also includes references to another statute, the Ralph Act, Cal. Civ. Code § 51.7, and it contains allegations regarding threats and coercion against plaintiff Sarah Swindell. *See* SAC ¶¶ 102, 104.

Defendant moves to dismiss the seventh cause of action to the extent that it includes claims brought under the Ralph Act, and to the extent that the Bane Act claim is still brought on behalf of Sarah Swindell.  In their opposition, plaintiffs concede that "the only claims for relief under the California Civil Code are being brought under Section 52.1 and not 51.7." Dkt. 33 at 12:20-21. Plaintiffs do not dispute that plaintiff Sarah Swindell may not bring a claim under the Bane Act. Accordingly, the Court dismisses the seventh cause of action to the extent that it includes claims brought under the Ralph Act, and to the extent that the Bane Act claim is still brought on behalf of Sarah Swindell.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS defendant's motion to dismiss portions of the third and seventh claims for relief.

**IT IS SO ORDERED**.

Dated: January 7, 2016

_____
SUSAN ILLSTON
United States District Judge